IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

GULFPORT MIDCON, LLC, a Delaware limited liability company,

      Plaintiff,

vs.

JAMES LEE WILSON, an individual,

      Defendant.

Case No. CIV-23-456-JD

## COMPLAINT

Plaintiff, Gulfport MidCon, LLC, a Delaware limited liability company ("Plaintiff" or "Gulfport"), for its Complaint against Defendant, James Lee Wilson, an individual ("Defendant" or "Wilson"), alleges and states as follows:

### I. PARTIES

1. Plaintiff is a Delaware limited liability company. The sole member of Plaintiff is a Delaware corporation, with its principal place of business in Oklahoma.

2. Defendant is an individual residing in Maricopa County, Arizona.

### II. JURISDICTION/VENUE

3. Plaintiff is a citizen of the State of Delaware and the State of Oklahoma.

4. Defendant is a citizen of the State of Arizona.

5. The action is therefore one between citizens of different states.

6. The amount in controversy, exclusive of interest and costs, exceeds $75,000. Therefore, pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction.

7. This Court has personal jurisdiction over each party by virtue of the contacts with the State of Oklahoma. Further, Defendant purposefully directed his activities in the State of Oklahoma by claiming to own, and receiving and accepting royalty interests attributable to, the Gypsy Interests (as defined below) located in Grady County, Oklahoma.

8. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the asserted claim occurred in this district.

### III.  FACTUAL BACKGROUND

9. Plaintiff operates several oil and gas wells which produce oil, gas and other hydrocarbons from the common sources of supply underlying Section 3-4N-6W ("Section 3") and Section 10-4N-6W ("Section 10"), Grady County, Oklahoma. Specifically, Plaintiff operates the following wells: the Cheyenne No. 1-10X3H (API No. 35051238040000) ("Cheyenne 1"); the Cheyenne No. 2-10X2H (API No. 35051238030000) ("Cheyenne 2"); the North Cheyenne No. 3-10X3H (API No. 35051241000000) ("North Cheyenne 3"); the North Cheyenne No. 4-10X3H (API No. 35051241020000) ("North Cheyenne 4"); the North Cheyenne No. 5-10X3H (API No. 35051241280000) ("North Cheyenne 5"); the North Cheyenne No. 6-10X3H (API No. 35051241270000) ("North Cheyenne 6"); the North Cheyenne No. 7-10X3H (API No. 35051241370000) ("North Cheyenne 7"); and the North Cheyenne No. 8-10X3H (API No. 35031241440000) ("North Cheyenne 8") (collectively, the "Cheyenne Wells").

10. Plaintiff also operates the Jeannie No. 1-27X04H (API No. 35051242570000) oil and gas well (the "Jeannie Well") which has a surface location in Section 27-5N-6W, Grady County, Oklahoma, but produces oil, gas and other

hydrocarbons from the common source of supply underlying Sections 4-4N-6W ("Section 4"), 27-5N-6W ("Section 27"), and 34-5N-6W ("Section 34"), Grady County, Oklahoma (Section, Section 4, Section 27, and Section 34 are collectively referred to as the "Subject Lands," and the Cheyenne Wells and the Jeannie Well are collectively referred to as the "Subject Wells").

11. Plaintiff's predecessor-in-interest, Vitruvian II Woodford, LLC ("Vitruvian"), originally operated the Cheyenne 1, Cheyenne 2, North Cheyenne 3 and North Cheyenne 4 wells. Vitruvian transferred operations of these wells to Plaintiff (or its affiliate) in or around February 2017.

12. The Cheyenne 1 and Cheyenne 2 were both producing oil, gas or other hydrocarbons prior to the transfer of operations from Vitruvian to Plaintiff, with each beginning production in early 2015.

13. Vitruvian, while serving as operator of the Cheyenne 1, Cheyenne 2, North Cheyenne 3 and North Cheyenne 4 wells, credited Defendant with owning certain overriding royalty interest in the Subject Lands (the "Gypsy Interests"). Accordingly, Defendant received and accepted royalty payments from production of the Cheyenne 1 and Cheyenne 2 wells beginning from the first date of production of each well attributable to Defendant's credited ownership of the Gypsy Interests.

14. After Vitruvian transferred operations to Plaintiff, and relying on the title information received from Vitruvian, Plaintiff continued to credit Defendant as owning the Gypsy Interests. Accordingly, Defendant received and accepted royalty payments from production of the Subject Wells attributable to Defendant's credited ownership of the

Gypsy Interests.

15. In total, Defendant has received and accepted more than $250,000 in royalty payments from production of the Subject Wells attributable to Defendant's credited ownership of the Gypsy Interests.

16. In or after August 2021, Plaintiff was contacted by Gypsy Energy, LLC ("Gypsy"), claiming that Plaintiff had failed to properly pay Gypsy its share of royalty proceeds from production of the Subject Wells attributable to its ownership of the Gypsy Interests.

17. After some investigation, Plaintiff discovered that Defendant was incorrectly credited with ownership of the Gypsy Interests and that Gypsy was the rightful owner of said interests.

18. Gypsy acquired the Gypsy Interests by and through a Quitclaim Mineral Deed and Assignment of All Mineral Interest ("Quitclaim"), executed jointly by a Jim L. Wilson and his wife, Gabriella E. Wilson, on August 5, 2004. Upon information and belief, Jim L. Wilson and his wife were residents of Enid, Oklahoma. The Quitclaim is recorded at Book 3644, Page 485, in the Grady County land records.

19. Upon information and belief, Defendant was incorrectly credited with ownership of the Gypsy Interests that were actually previously owned by Jim L. Wilson and his wife of Enid, Oklahoma, and now owned by Gypsy.

20. Gypsy ultimately filed a lawsuit against Plaintiff's affiliate, Gulfport Energy Corporation, in an action styled *Gypsy Energy, LLC v. Gulfport Energy Corp.*, Case No. CJ-2023-1, District Court of Grady County, State of Oklahoma, to recover the royalty

payments improperly received and accepted by Defendant.

21. As Operator of the Subject Wells, and in compliance with the Oklahoma Production Revenue Standards Act, 52 O.S. §§ 570.1, *et seq.* ("PRSA"), Plaintiff agreed to compensate Gypsy for the payments wrongfully accepted by Defendant.

22. After discovering the error in ownership of the Subject Lands, Plaintiff placed Defendant's interest in suspense. Upon doing so, Defendant contacted Plaintiff to complain that he was no longer receiving royalty payments from the Subject Wells attributable to his purported ownership of the Gypsy Interests. Upon information and belief, Defendant does not, and has never, owned overriding royalty interests in the Subject Lands, including the Gypsy Interests. Despite this, Defendant has knowingly and willingly accepted royalty payments from production of the Subject Wells for over five (5) years.

23. Defendant has failed and refused to reimburse Plaintiff despite the fact that he is not the owner of the Gypsy Interests and was not entitled to the royalty proceeds he wrongfully accepted attributable to the Gypsy Interests.

### IV. COUNT I
### BREACH OF THE OKLAHOMA PRODUCTION REVENUE STANDARDS ACT
### 52 O.S. §§ 570.1, *et seq.*

24. Plaintiff incorporates by reference and restates the allegations contained in paragraphs 1 through 23 as if fully restated herein.

25. Defendant does not own the Gypsy Interests.

26. Despite the fact that Defendant knew or should have known that he did not own the Gypsy Interests, Defendant knowingly and wrongfully accepted royalty payments attributable to the Gypsy Interests.

27. Upon discovery of the error and in compliance with its obligations under the PRSA, Gulfport compensated Gypsy for the royalty payments wrongfully accepted by Defendant.

28. At the same time, Plaintiff placed Defendant's interest in suspense. Upon doing so, Defendant contacted Plaintiff to complain that he was no longer receiving royalty payments from the Subject Wells attributable to his purported ownership of the Gypsy Interests. Upon information and belief, Defendant does not, and has never, owned overriding royalty interests in the Subject Lands, including the Gypsy Interests. Despite this, Defendant has knowingly and willingly accepted royalty payments from production of the Subject Wells for over five (5) years.

29. Because Defendant was aware, or should have been aware, that he did not own the Gypsy Interests, and, despite this knowledge has represented to Plaintiff that he did, in fact, own the Gypsy Interests and has received and accepted royalty payments attributable to the Gypsy Interests, Defendant is in breach of the PRSA.

30. Accordingly, Plaintiff is entitled to an award of actual damages in the amount equal to the royalty payments improperly paid to Defendant, all resulting costs and damages suffered by Defendant as a result of Defendant's error, and a reasonable attorney fee in an amount to be determined at trial but in excess of $75,000.00.

## V. COUNT II
## UNJUST ENRICHMENT

31. Plaintiff incorporates by reference and restates the allegations contained in paragraphs 1 through 30 as if fully restated herein.

6

32. Defendant does not own the Gypsy Interests.

33. Despite the fact that Defendant knew or should have known that he did not own the Gypsy Interests, Defendant knowingly and wrongfully accepted royalty payments attributable to the Gypsy Interests.

34. After discovering the error, Plaintiff placed Defendant's interest in suspense. Upon doing so, Defendant contacted Plaintiff to complain that he was no longer receiving royalty payments from the Subject Wells attributable to his purported ownership of the Gypsy Interests. Upon information and belief, Defendant does not, and has never, owned overriding royalty interests in the Subject Lands, including the Gypsy Interests. Despite this, Defendant has knowingly and willingly accepted royalty payments from production of the Subject Wells for over five (5) years.

35. By wrongfully accepting the royalty payments attributable to the Gypsy Interests, Defendant has been unjustly enriched to the detriment of Plaintiff.

36. Plaintiff is entitled to recover against Defendant the amount which Defendant has been unjustly enriched due to Defendant's wrongful acceptance of royalty proceeds attributable to the Gypsy Interests and failure and refusal to reimburse same to Plaintiff despite his knowledge that he did not own the Gypsy Interests.

## **PRAYER FOR RELIEF**

WHEREFORE, premises considered, Plaintiff prays that judgment be rendered in its favor and against Defendant as follows:

A. Awarding Plaintiff actual damages arising from Defendant's breach of the PRSA, all resulting costs and damages suffered by Plaintiff as a result of Defendant's

violation of the PRSA, and a reasonable attorney fee;

B.   Awarding Plaintiff actual damages in the amount which Defendant has been unjustly enriched due to Defendant's wrongful acceptance of royalty proceeds attributable to the Gypsy Interests and failure and refusal to reimburse the same to Plaintiff; and

C.   Awarding such other relief, general or specific, at law or in equity, to which Plaintiff may be entitled.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on all matters so triable.

Respectfully submitted,

s/ Michael P. Whaley
David A. Elder, OBA #20687
Michael P. Whaley, OBA #33640
HARTZOG CONGER CASON LLP
201 Robert S. Kerr, Suite 1600
Oklahoma City, Oklahoma 73102
(405) 235-7000 (Telephone)
(405) 996-3403 (Facsimile)
delder@hartzoglaw.com
mwhaley@hartzoglaw.com

**ATTORNEYS FOR PLAINTIFF GULFPORT MIDCON, LLC**